## Summary of the Argument:

After this Court's decision in *United States V. Diaz*, it is clear that the Second Amendment covers the conduct prohibited by § 922(g)(1) and that in order to disarm Movant, the government must prove a historical tradition of permanently and severely punishing people like him. 166 F.4th 458, 467-69(5th Cir. Sept. 18, 2024). The government failed to meet this burden and offered no historical analogues that would support Movants permanent and complete disarmament. Accordingly, the district court erred by failing to dismiss the indictment charging Movant with violating § 922(g)(1), where the statue is unconstitutional as applied to him under the Second Amendment. While Movant acknowledges that *Diaz* forecloses his facial challenge to § 922(g)(1), he asserts it here to preserve it for further review.

After *Diaz*, § 922(g)(1) is now also unconstitutional because it fails to provide a person of ordinary intelligence with fair notice of which predicate felonies justify disarmament. Therefore, the district court plainly erred by accepting the Movants guilty plea to a statue that is void for vagueness. Moreover, although not raised in the District Court, the district court plainly erred by accepting Movants guilty plea because § 922(g)(1) constitutes an unconstitutional extension of Congress' authority under the Commerce clause. This Court has previously rejected the argument, but Movant asserts it to preserve it for further review.

The district court also plainly erred by accepting Movants guilty plea where § 922(g)(1) violates his right to equal protection under the Fifth Amendment because the statue prohibits possession of a firearm based on disparate predicate convictions and without uniform definitions of the circumstances resulting in a person's loss or restoration of the right to possess a firearm. While this Court has previously declined to find that § 922(g)(1) burdens a fundamental right, *Bruen* rendered that case law obsolete, and *Diaz* supports the view that strict scrutiny because it is not narrowly tailored to achieve any compelling government interest. Accordingly, it violates the Equal Protection Clause. Movant respectfully requests that this Court vacate his conviction and sentence, remanding for further proceedings, on any or all grounds raised within.

## Argument

I. **The district court erred by failing to dismiss the indictment because § 922(g)(1) violates the Second Amendment as applied to Movant.**

The Second Amendment mandates: "A well-regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. Section 922(g)(1) criminalizes firearm possession for any person who has been convicted of a crime punishable for a term exceeding one year. Under the framework announced in *Bruen* and clarified by this Court in *Diaz*, § 922(g)(1) violates the Second Amendment as applied to Movant because the Government failed to provide, and the district court failed to find, that his

MCH

disarmament is supported by this Nation's history and tradition.

### A. Standard of Review

This court reviews constitutional challenges to a statute de novo. United States V. Perez-Macias, 335 F.3d 421, 425 (5th Cir. 2003).

### B. *Bruen* "fundamentally changed" the framework for analyzing Second Amendment challenges.

The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation.' *District of Columbia V. Heller,* 544 U.S. 570, 592 (2008). In *Bruen*, The Court set out "the standard for applying the Second Amendment": When the Second Amendments plain text covers an individual's conduct, the constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

In other words, when the plain text of the Second Amendment covers the prohibited conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. At 19. "Only then may a court conclude that the individual's conduct fails outside the Second Amendment's unqualified command." ID. at 24 (internal quotation marks and citation omitted).

This Court has now repeatedly affirmed that "*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering our prior precedent obsolete." *United States V. Rahimi,* 61 F.4th 443, 450-51 (5th Cir. 2023), rev'd and remanded, 144 S.Ct. 1889 (2024) (*Rahimi* I); see *Diaz*, 116 F.4th at 465 (same); see id. (explaining that "[t]he law of orderliness mandates that we abandon that prior [pre-*Bruen* § 922(g)] precedent").

### C. The Second Amendment's plain text covers possession under § 922(g) (1).

Movants conduct is covered by the Second Amendment. See *Diaz*, 166 F.4th at 467 ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g) (1)"). Section § 922(g) (1) is a complete and permanent ban on all firearm possession, with no limitation on type or use. Thus, because firearm possession is conduct covered by the Second Amendment, it is presumptively constitutionally protected. See *Bruen*, 597 U.S. at 17

It is likewise now undisputed in this Circuit that those with felony convictions are among "the people" protected by the Second Amendment. Diaz, 116 F.4th at 466. While a defendant's status as a felon is relevant to the court's Bruen analysis, "it becomes so in Bruen's second step of whether regulating firearm use in this way is consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." Id. At 466-67 (quoting Bruen, 597 U.S. at 24). The Second Amendment right belongs to "all Americans." Heller, 554 U.S. at 580-81. Accordingly, the categorical ban on an individual's possession of a firearm based on their prior conviction status is presumptively unconstitutional under the plain text of the Second Amendment. See Bruen, U.S. at 17.

### D. The Government has not met its burden to support disarmament.

The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), *Diaz*, 116 F.4th at 467, therefore the burden shifts to the Government to demonstrate that regulating Movant's possession of a firearm," *Bruen*, 597 U.S. at 24. To prove that a challenged regulation is consistent with the Nation's historical tradition of firearm regulation, the Government faces a "heavy burden, as the Second Amendment 'is not a second-class right.' "*United States v. Connelly*, 117 F.4th 269,274 (5th Cir. Aug. 28, 2024) (quoting *Bruen*, 597 U.S. at 70).

In *Bruen*, the Court held that to justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597U.S. at 24. *United States V. Rahimi* clarified that "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." 144 S. Ct. 1889, 1898 (2024) (internal quotation marks and citations omitted). "Why and how the regulation burdens the right are central to this inquiry." Id.; see *Bruen*, 597 U.S. at 29. Yet, "[e]ven when a law regulates arms-bearing for a permissible reason, ... it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 144 S.Ct. at 1898.

For challenged and historical laws to be "relevantly similar" they must "share a common 'why' and 'how': they must both (1) address a comparable problem (the 'why") and (2) place a comparable burden on the right holder (the 'how')." *Connelly*, 117 F.4th at 274. In the context of § 922(g)(1), courts must consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 29). Although the law need not be a "dead ringer" or "historical twin," it must comport with the principles underlying the Second Amendment. *Rahimi*, 144 S. Ct. at 1897-89 (internal quotation marks and citation omitted).

### E. Section 922(g)(1) is unconstitutional as applied to Movant

In Diaz, this Court recently upheld § 922(g)(1)'s constitutionality against as-applied and facial challenges brought by a defendant with disqualifying convictions for "car theft, evading arrest, and possessing a firearm as a felon." 116 F.4th at 467. It reasoned that because some thieves in colonial and founding era America were subject to the death penalty, "if capital punishment was permissible to respond to theft, then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." Id. At 469. Although that analysis resolved the as-applied challenge against Diaz, this Court recognized that the opinion would "not foreclose future as-applied challenges by defendants with different predicate convictions." Id. At 470 n.4.

Movant is disqualified from possessing a firearm under § 922(g)(1) based on a prior conviction for _____. The Government has put forth no evidence demonstrating that in the Founding Era,

defendants convicted for similar crimes were subject to the death penalty or forfeiture of estate. Instead, it has only claimed – without providing specific analogues relevant to movant—that pre-Bruen precedent governs and that the Second Amendment applied only to law-abiding members of society. It claims that such crimes such as forgery and horse theft justified capital punishment and forfeiture do not apply to Movant's predicate conviction, especially where a review of laws existing at the founding suggests that convicted robbers were not subject to the same penalties.

For example, in 1796, New Jersey passed a law punishing robbers with "a fine and solitary imprisonment at hard labor, for any term not exceeding fifteen years." LAWS OF THE STATE OF NEW JERSEY 213 (William Patterson, ed. 1800) (Act of March 18, 1796). Virginia passed a law the same year subjecting robbers to "not less than three, not more than ten years," and thereby started a trend. A COLLECTION OF ALL SUCH ACTS OF THE GENERAL ASSEMBLY OF VIRGINIA 356(1803) (Act of Dec. 15, 1796). Maryland passed a robbery statute in 1809 with an identical penalty provision, which likewise subjected offenders "to undergo a confinement... for a period of time not less than three nor more than 10 years." III THE LAWS OF MARYLAND 462 (Virgil Maxcy, ed., 1811) (Act of November 1809). Georgia followed suit in 1811 and passed a law punishing robbers with "hard labor in a penitentiary house, or solitude, for a period not less than three, nor more than ten years." A COMPILATION OF LAWS OF THE STATE OF GEORGIA 549 (Lucius Q. Lamar, ed.1821) (Act of 1811). None of these laws subjected convicted robbers to the death penalty or forfeiture of estate. The laws from New Jersey and Maryland abolished forfeiture of estate as a consequence for robbers, III The Laws of Maryland, supra, at 467-68; Laws of the State of New Jersey, supra, at 221, and with a statute passed in 1792, Virginia had previously abolished forfeiture of estate as a felony punishment, A Collection of All Such Acts, supra, at 106 (Act of Nov. 13, 1792).

Since Diaz treats the historical practice of harsh felony punishments—execution and estate forfeiture—as equivalent to disarmament, § 922(g) (1) can be constitutionally applied to Movant only if his disqualifying conviction would have been subject to those punishments in the Founding Era. See id.at 469-70. The Government failed to meet its burden to prove that "[d]isarming" Movant "fits within" any "tradition of serious and permanent punishment" for offenders convicted of similar crimes in the Founding Era. Id at 470. The district court thus erred because § 922(g) (1) is unconstitutional as applied to him. Accordingly, his conviction must be vacated.

## II. Section 922(g) (1) is facially unconstitutional under the Second Amendment. (Foreclosed by Precedent.)

Although this Court recently held that § 922(g)(1) is not facially unconstitutional, see Diaz, 116F.4th at 472, foreclosing this challenge, movant raises the issue to preserve it for Supreme Court review.

### A. Standard of Review

This Court reviews for plain error issues raised for the first time on appeal. United States V. Toure, 965 F.3d 393,399 (5th Cir.2020); See Fed. R. Crim.P.52 (b). To prevail, Movant must show an error that is clear or obvious and affects his substantial rights. Puckett V. United States, 556 U.S. 129, 135 (2009). This Court then has the discretion to

correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. A conviction under an unconstitutional statute meets the plain error standard. See United States v. Knowles, 29 F.3d 947, 951-52(5th Cir. 1994)

### B. The Nation's historical tradition of regulating firearms is inconsistent with permanently stripping those with felony convictions of their Second Amendment rights.

Section § 922(g) (1) broadly addresses a general societal concern that has persisted since the Eighteenth century: how society treats those members who violate the law, including whether those members retain their constitutional right to keep and bear arms (the "why"). The Government cannot meet its burden under Bruen and Rahimi because the Nation's historical tradition of regulating firearms, even against those with felony convictions, is incompatible with the total and permanent categorical ban imposed by § 922(g) (1) (the "how"). There is simply no "relevantly similar" historical tradition of permanently stripping people with felony convictions of their Second Amendment rights. On its face, § 922(g)(1) prohibits movant a member of "the people" protected by the Second Amendment, from engaging in the exact conduct the Amendment sought to place beyond regulation – the mere possession of a firearm. Since § 922(g) (1) prohibits conduct protected by the Second Amendment, the law is facially unconstitutional.

Many scholars have concluded that "no colonial or state law in eighteenth century America formally restricted the ability of felons to own firearms." C. Larson, Four Exceptions in Search of a Theory: District of Columbia V. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1374-79 (2009); C. Kevin Marshall, Why can't Martha Stewart have a Gun? 32 Harv.J.L. &PUB.POL'Y 695, 698 (2009) (Observing that such prohibitions have their origins in the twentieth century). Then Judge Barret and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." Kanter v. Barr, 919 F. 3d 437, 451, 453-64(7th Cir. 2019) (Barrett, J., dissenting) (surveying history); Heller V. Dist. Of Columbia, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century.")

The Government has agreed. In pre- Bruen briefing, the Government acknowledged that § 922(g)(1) "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. At *27-28, United States v. Pettengil, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011)(quoting United States V. Booker, 644 F.3d 12, 23-24 (1st Cir. 2011)). The Government has stated numerous times:" As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." E.g., U.S. Br. At *25, United States V. Staten, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011)(citing Marshall, supra, at 696-728). Not until Bruen was decided did the Government change its position.

The Government has repeatedly attempted to justify § 922(g) (1) by pointing to historical authority that allowed for the disarmament of disempowered minority communities, including enslaved peoples and racial, religious, and

MCH

ethnic minorities. Many of these types of categorical restrictions were rejected by the Second Amendment and should serve as "cautionary tales" today. Rahimi, 255 S. Ct. at 1946 (Thomas, J., dissenting) ("Far from an exemplar of congress's authority, the discriminatory regimes the Government relied upon are cautionary tales. They warn that when majoritarian interests alone dictate who is 'dangerous,' and thus can be disarmed, disfavored groups become easy prey."). But even those of arguable historical relevance do not "impose a comparable burden on the right" and are not "comparably justified" to § 922(g) (1)'s categorical disarmament of felons. Bruen, 597 U.S. at 29 (explaining the metrics of comparing "relevantly similar" analogues).

Moreover, Rahimi undermines any reliance on pre-Founding laws. In Rahimi, the Supreme Court explained that through the centuries pre-dating the founding, "English law had disarmed not only brigands and highwaymen but also political opponents and disfavored religious groups. By the time of the Founding, however, state constitutions and the Second Amendment had largely eliminated governmental authority to disarm political opponents on this side of the Atlantic."144 S.Ct. at 1899 (emphasis added). The Government, therefore, cannot meet its burden by relying on those pre-Founding laws.

Given the history of firearm regulation in America, there is "no set of circumstances under which" § 922(g) (1) "would be valid." See id. At 1898 (quoting United States V. Salerno, 481 U.S. 739, 745 (1987)). Founding Era Constitutions frequently premised both qualifications for voters and eligibility to hold office on the absence of certain criminal convictions. None incorporated a similar disqualifications into the right to keep and bear arms. This Nation, in turn, has no tradition of criminalizing the mere possession of a firearm by someone like the movant. Even in the Founding Era, legislators knew that some offenders convicted for serious crimes would return to society after completing a sentence of imprisonment longer than one year. Since no group of criminals were historically disarmed, no application of § 922(g) (1) can comply with the Second Amendment. That reality makes § 922(g) (1) facially unconstitutional. There is an obvious collision between § 922(g) (1) and the right to bear arms. That collision renders the statute presumptively unconstitutional, and the historical record provides the government with no meaningful opportunity to combat the presumption. Since no analogous tradition of regulation exists, § 922(g) (1) cannot be unconstitutionally applied against movant or any other American with a criminal record. Based on the foregoing, the statute is facially unconstitutional because it violates the Second Amendment in all applications. See Rahimi, 144 S. Ct. at 1898.

## II. The district court plainly erred by accepting movant's guilty plea because § 922(g) (1) is unconstitutionally vague.

### A. Standard of Review

This Court reviews this issue, raised for the first time on appeal, for plain error. Toure, 965 F.3d at 399. Movant must thus show an error that is clear or obvious and affects his substantial rights. Puckett, 556 U.S. at 135. Where the

law is unsettled at the time of trial but settled by the time of appeal, the plainness of the error is judged by the law at the time of appeal. United States v. Escalante-Reyes, 689 F.3d 415,423 (5th Cir.2012). A conviction under an unconstitutional statute meets the plain error standard. See Knowles, 29 F.3d at 951-52.

Although this Court concluded that § 922(g)(1) is not unconstitutional in all applications, Diaz, 166 F.4th at 471-72, the statute remains unconstitutional because it fails to provide a person of ordinary intelligence fair notice of what conduct is prohibited. In Diaz, this Court recognized that while § 922(g)(1) was constitutional as applied to Diaz's prior felony convictions, it might not be constitutional as applied to different predicate convictions:

> We emphasize that our holding is not only premised on the fact that Diaz is a felon. Simply classifying a crime as a felony does not meet the level of historical rigor required by Bruen and its progeny. The legislature has determined that the term "felony" encompasses all crimes punishable by more than one year of imprisonment, rendering Diaz a felon today. But not all felons today would have been considered felons at the Founding.

Id. At 469; see Id. At 470 n.4 (acknowledging that other predicate convictions may not justify disarmament under § 922(g) (1)). Post-Diaz, there are now many persons who have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), but who cannot be disarmed consistent with the Second Amendment because the Government cannot show a longstanding tradition of disarming someone with a similar criminal history, see Diaz, 116 F.4th at 467.

"In our constitutional order, a vague law is no law at all." United States v. Davis, 588 U.S. 445,447 (2019). The constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them." Id. Due process guarantees that a "person of ordinary intelligence [must have] a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Under the current test permitting disarmament only if the Government "demonstrates that the Nation had a longstanding tradition of disarming someone with [an analogous] criminal history," an ordinary person cannot know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. Diaz, 116 F.4th at 467. There is nowhere that an ordinary person with a past criminal conviction can look for a "sure way to know what consequences will attach to their conduct," and to determine whether possessing a firearm is constitutionally permitted or will expose them to federal prosecution. Davis, 588 U.S. at 488. Bruen, Rahimi and Diaz make clear that it is not enough to look to the statute for guidance, and case law is likewise unhelpful as Diaz requires courts to engage in historical analysis for each predicate felony to ensure that there is a sufficient longstanding tradition of disarmament.

"When Congress passes a vague law, the role of the courts under our constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite congress to try again." Davis, 588 U.S. at 448.

Section § 922(g) (1) is facially unconstitutional because it fails to provide an ordinary person with fair notice of what conduct is prohibited. Accordingly, this Court should dismiss the indictment and "invite congress to try again." Id.

### A. The error is plain, affected Movant's substantial rights, and should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings.

As explained within, post- Diaz, § 922(g) (1) is plainly unconstitutionally vague and it is of no consequence that Diaz was decided after the proceedings in the district court concluded. See Knowles, 29 F.3d at 952. An error affects substantial rights if there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez V. United States, 578 U.S. 189, 194 (2016) (internal quotation marks and citation omitted). Movant would not have pleaded guilty to an unconstitutional charge and the result of his proceedings would thus obviously be different absent any error.

An error will typically have a serious effect on the fairness, integrity, and public reputation of proceedings if it is "reasonably likely to have resulted in a longer prison sentence that necessary." United States v. Urbina-Fuentes, 900 F.3d 687, 698 (5th Cir. 2018) (internal quotation marks and citation omitted). Movant received a ____ month term of imprisonment under an unconstitutional statute. See ROA.230. Consequently, this Court should Vacate Movant's conviction and remand for further proceedings.

## III. The district court plainly erred by accepting Movant's guilty plea because § 922(g) (1) is unconstitutional under the Commerce Clause. (Previously rejected by this Court's precedent.)

### A. Standard of Review

Movant raises this issue for the first time on appeal, and this Court therefore reviews for plain error. *Toure*, 965 F.3d at 399; *see* FED. R. CRIM. P.52 (b). To prevail, Movant must show an error that is clear or obvious and affects his substantial rights. *Puckett*, 556 U.S. at 135. This Court has previously rejected this Commerce Clause-based argument. *See United States v Seekins,* No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (summarizing precedent). Movant raises it here for possible further review by the Supreme Court.

### B. Section 922(g) (1) constitutes an unconstitutional extension of Congress' authority under the commerce clause.

Article I, § 8 of the United States Constitution provides: "congress shall have power" to "regulate Commerce

with foreign Nations, and among the several States, and with the Indian Tribes." The test for determining the scope of Congressional power to regulate activities affecting interstate commerce is set forth in *United States v Lopez*, 514 U.S. 549(1995). In *Lopez,* the Supreme Court found that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id. At 559.* The *Lopez* decision appeared to, but did not expressly, overrule the more permissive test for federal regulation of gun possession articulated in *Scarborough v. United States*, 431 U.S. 563 (1977), which required only the "minimal nexus that the firearm have been, at some time, in interstate commerce." *Id. At 575; cf. United States v Seekins,* 52 F.4th 988,991 (5th Cir. 2022) (ho, J., dissenting from denial of rehearing en banc) (suggesting the holding in *Scarborough* was statutory, and not constitutional).

Members of the Supreme Court and this Court have noted that *Lopez* and *Scarborough* are irreconcilable. *See Alderman v. United States* 131 S.Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of certiorari) ("*Scarborough,* as the lower courts have read it, cannot be reconciled with *Lopez.*"); Seekins, 52. F.4th at 991-92 (Ho, J., dissenting) (citing cases); *United States v Kuban,* 94 F.3d 971,977 (5th Cir. 1996) (DeMoss, J., dissenting) ("The precise holding in *Scarborough is* in fundamental and irreconcilable conflict with the rationale of *Lopez.*"). But the Supreme Court has not addressed the precise impact of *Lopez* on *Scarborough. see United States v, Hill,* 927 F.3d 188,215 n.10 (4th Cir. 2019)(Agee, J., dissenting)("While some tension exists between *Scarborough* and the Supreme Court's decision in *Lopez,* the Supreme Court has not granted certiorari on a case that would provide further guidance"). Lacking clear guidance, Courts after *Scarborough* have continued to hold that § 922(g) (1)'s nexus element can be satisfied if the firearm traveled –at any point-across a state boundary. *See, e.g., United States v. Rawls,* 85 F.3d 240,243 (5th Cir.1996).

This minimal nexus requirement in *Scarborough* does not satisfy *Lopez.* Mere gun possession—the crime for which the Movant was convicted—involves entirely local, non-commercial activity. It does not involve participation in any cognizable market. *See Rawls,* 85 F.3d at 243 (Garwood, J., concurring)("one might well wonder how it could be rationally concluded that mere possession of a firearm in any meaningful way concerns interstate commerce simply because the firearm had, perhaps decades previously before the charged possessor was even born, fortuitously traveled in interstate commerce"). *Scarborough's* reading of the § 922(g) (1) nexus element is thus too broad, and it impermissibly extends federal power over purely local activity.

In *Seekins,* 52 F.4th at 989 (Ho, J., dissenting) (citation omitted), Judge Ho, dissenting from the court's denial of rehearing en banc, warned of the overreach of the commerce clause as it relates to § 922(g) (1), lamenting that:

MCH

> For too long, our circuit precedent has allowed the federal
> Government to assume all but plenary power over our nation. In
> Particular, our circuit precedent licenses the federal government to
> regulate the mere possession of virtually every physical item in our
> nation—even if it's undisputed that the possession of the item will have
> zero impact on any other state in the union. The Federal government
> just has to demonstrate that he item once traveled across state lines at
> some point in its lifetime, no matter how distant or remote in time.
>
> That is no limit at all. If the only thing limiting federal power is
> Our ability to document (or merely speculate about) the provenance of
> a particular item, the Founders' assurance of a limited national
> government is nothing more than a parchment promise.

Much like the circumstances Judge Ho complained of in *Seekins,* in this case, there was no evidence that Movant's possession of a firearm had any impact on any other state and there was no record evidence of any commercial transaction of any kind or that the firearm traveled across state lines at any particular moment in time. *See Id. At 990.* Current precedent fails to recognize that "there must be some limit on federal power under the Commerce Clause" and in the context of § 922(g)(1), "allows the federal government to regulate any item so long as it was manufactures out-of-state—without any regard to when, why, or by whom the item was transported across state lines." *Id.* (emphasis in original). This allows the federal government to regulate "virtually every tangible item anywhere in the United States"; "it's hard to imagine any physical item that has not traveled across state lines at some point in its existence, either in whole or in part." *Id.*

Section § 922(g) (1) must also be unconstitutional as applied to movant. Movant's indictment did not state his possession of the relevant firearm was an economic activity. ROA. 245-46. Nor did it allege that he was engaged in the relevant market at the time of the regulated conduct. ROA.245-46. The sole act to establish a factual basis for the guilty plea on this element of the offense was that the firearm was manufactured outside of Mississippi. See ROA.266. The Government offered no proof that Movant traveled in interstate commerce to bring the firearm to Mississippi, or even that he purchased the firearm from a seller participating in interstate commerce. See ROA.266.

The Commerce Clause power "must be read carefully to avoid creating a general federal authority akin to the police power," NFIB V. Sebelius, 567 U.S. 519, 536 (2012); see also alderman, 131 S. Ct. at 703 (Thomas, J., dissenting) ("permitting Congress to regulate or ban possession of any item that has ever been offered for sale or crossed state lines" would be "such an expansion of federal authority" as to "trespass on state police powers.") To find that § 922(g) does not constitute Congressional overreach under the Commerce Clause supports a view that it is enough to confer

federal jurisdiction "that some object (or component of an object) at some unknown (and perhaps unknowable) point in time traveled across state lines"; it is therefore "hard to imagine anything that would remain outside the federal government's commerce power." *Seekins,* 52 F.4th at 990) (HO, J., dissenting). "There is no plausible reading of the Commerce, as originally understood by our Founders that could possibly give the federal government such reach." *Id.* (citations omitted). Accordingly, this Court should dismiss the indictment because § 922(g) (1) is an unconstitutional extension of Congress's authority under the Commerce Clause.

Although thus far this Court has adhered to the view that *Scarborough's* "Minimal nexus" is sufficient both to prove guilt under the statute and to bring any subsequent act of possession within Congress's power to regulate, *United States v Alcantar,* 733 F.3d 143,145-46 (5th Cir. 2013), Movant urges this Court to hold that § 922(g)'s possession prong, as commonly understood and applied, exceeds Congress's enumerated powers.

### A. The error may become plain, it affected Movant's substantial rights, and it should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of judicial proceedings.

Although this Court rejected the Commerce Clause argument in *Alcantar,* 733 F.3d at 145-46, the error may become plain if this Court or he Supreme Court issues a favorable decision in another pending case, *see Henderson v. United States,* 568 U.S. 266,274 (2013). The error affected Movant's substantial rights because he would not have pleaded guilty otherwise and the result of his proceedings would thus obviously be different absent any error. Moreover, the error has a serious effect on the fairness, integrity, and public reputation of proceedings because it requires him to serve a prison sentence for violating a statute that cannot be constitutionally applied to him. *See Molina-Martinez,* 578 U.S. at 194; *see also Urbina-Fuentes,* 900 F.3d at 698. Consequently, this court should vacate Movant's conviction and remand for further proceedings

### IV. The district court plainly erred by accepting movant's guilty plea because § 922(g)(1) violates the Equal Protection Clause under the Fifth Amendment by burdening Movant's fundamental right to keep and bear arms. ( Foreclosed by precedent)

#### A. Standard of Review

This Court reviews this issue, raised for the first time on appeal, for plain error. *Toure,* 965 F.3d at 399. Although this Court recently rejected a similar argument raised on plain error review in *United States v. Howard,* No. 24-40033, 2024 WL 4449866, *2 (5th Cir. Oct 9, 2024), Movant raises it here to preserve it for further review.

## B. Section 922(g) (1) violates Movant's fundamental right to keep and bear arms.

The Fifth Amendment provides that no one shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "The liberty protected by the Fifth Amendment's Due process clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor,* 570 U.S. 744, 774 (2013); *see also Adarand Constructors, Inc. V. Pena,* 515 U.S. 200, 224 (1994) (noting that the Court's approach to Fifth Amendment equal protection claims is the same as to equal protection claims under the Fourteenth Amendment's equal protection clause.) The Fifth and Fourteenth Amendments establish that "equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights" and that "in the administration of criminal justice, no different or higher punishment should be imposed upon one that such as is prescribed to all for like offenses." *Yick Wo V. Hopkins,* 118 U.S. 356, 367-68 (1886) (internal quotations omitted).

Equal protection analysis requires strict scrutiny when a law impermissibly interferes with the exercise of a fundamental right. *See Kramer V. Union Free School Dist. No.15,* 395 U.S. 621, 626, 633(1969). A right is "fundamental" for equal protection purposes if it is "explicitly or implicitly guaranteed by the Constitution." *San Antonio Indep. Sch. Dist. V. Rodriguez,* 411 U.S. 1, 35(1973).[2] The Government bears the burden of proving that a statute meets strict scrutiny, i.e., that it is narrowly tailored to further a compelling government interest. *See Johnson v. California,* 543 U.S. 499, 505 (2005)

The Second Amendment right to bear arms is a fundamental right under the Constitution. Indeed, the Supreme Court has recognized this right as "among those fundamental rights necessary to our system of ordered liberty." *Rahimi,* 144 S. Ct. at 1897 (quoting McDonald v. City of Chicago, 561 U.S. 742, 778(2010)); *see Rahimi I,* 61 F.4th at 461 (Ho, J., concurring) ("The right to keep and bear arms has long been recognized as a fundamental civil right."). The Supreme Court has repeatedly analogized the Second Amendment to other constitutional rights guaranteed to every American, *see, e.g., Johnson v> Eisentrager,* 339 U.S. 763 (1950)(describing the First, Second, Fourth, Fifth and Sixth Amendments as the "civil-rights Amendments"); Konigsberg v. State Bar of Cal., 366 U.S. 36, 49-50 n.10(1961)(comparing "the commands of the First Amendment" to "the equally unqualified command of the Second Amendment"); *Bruen, 597* U.S. at 18-19, 24,

---

[2]There may also be certain rights that fall outside of the text of the Constitution yet nonetheless trigger strict scrutiny under an equal protection analysis as "fundamental rights.'See Rodriguez, 411 U.S. at 99-100(Marshall, J., dissenting)(noting the Court has seemingly applied heightened scrutiny to laws infringing on rights not explicitly or implicitly guaranteed by the Constitution, including the right to procreate, the right to possess a firearm is enshrined in the Second Amendment and thus constitutionally guaranteed and "fundamental" Id. At 35.

and it is beyond dispute that the Second Amendment is not a second-class right, *Connelly,* 117 F.4th at 274; *Bruen,* 597 U.S. at 70; *McDonald,* 561 U.S. at 780.[3]

Section § 922(g)(1) thus burdens Movant's fundamental right to keep and bear arms. *Diaz,* 116 F.4th at 467 ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Although this Court had previously declined to find that § 922(g)(1) burdens a fundamental right, it did so based on precedent that presumed that felons had no Second Amendment rights, *see, e.g., United States v. Darrington,* 351 F.3d 632, 634-35 (5th Cir. 2003); *see also Heller,* 554 U.S. at 626. In *Diaz,* this Court specifically rejected the Government's argument that felons lack Second Amendment protection based purely on their status. 116 F.4th at 466-67. It likewise rejected the argument that pre-*Bruen* precedent applying "means-end" scrutiny like *United States v Emerson,* 270 F.3d 203 (5th Cir. 2001) and *Darrington* foreclosed Second Amendment challenges:

> Each of those cases predates *Bruen,* which established a new Historical paradigm for analyzing Second Amendment claims. Under the rule of orderliness, a later panel may overturn another panel's decision when it has fallen unequivocally out of step with some intervening change in the law. *Bruen* constitutes such a change, rendering our prior precedent obsolete.

116 F.4th at 465 (internal quotation marks and citations omitted); *see also Bruen,* 597 U.S. at 19, 22-24.

In *Darrington,* this Court relied upon the Supreme Court's not erroneous view that "legislative restrictions on the use of firearms" do not "trench upon any constitutional protected liberties." 351 F.3d at 635 (quoting *Lewis V. United States,* 455 U.S. 55 (1980)). The *Darrington* Court supported its determination that § 922(g)(1) was subject to rational basis review, rather than strict scrutiny, by relying on *Emerson's* exclusion of "felons as a class from the Second Amendment's protection of "the right of Americans generally to keep and bear their private arms as historically understood in this country." 351 F.3d at 635 (quoting *Emerson,* 270 F.3d at 261.)

*Diaz* has now made clear that the reasoning in *Darrington* and *Emerson* was based on an "obsolete" and faulty presumption that felons categorically do not receive Second Amendment protection. *Diaz,* 116 F.4th at 467 (noting that status as a felon is not relevant in considering the Second Amendment's initial applicability); *Id.* ("The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"). Accordingly, any reliance upon pre-*Bruen* precedent like *Darrington* and *Emerson* is misplaced.

---

[3]Moreover, the Court has frequently relied on history when deciding cases involving textually un enumerated rights under the Due Process Clause, regularly observing that the Fourteenth Amendment "Specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg,* 521 U.S. 510, 524-45 (1925) ("liberty of parents and guardians to direct the upbringing and education of children under their control").

*Diaz* established that *Darrington* and *Emerson* are unpersuasive post-*Bruen*. *See Diaz*, 116 F.4th at 467. Movant has a fundamental right to keep and bear arms and this Court should therefore apply strict scrutiny to § 922(g)(1). Classifications involving a fundamental right are presumed unconstitutional and survive strict scrutiny only when the Government can demonstrate that the law uses the least restrictive means to achieve a compelling purpose. *See Rodriguez,* 411 U.S. at 1. The Government cannot meet this burden. Section § 922(g)(1) treats identically situated persons differently and the statute lacks a uniform definition of the conduct that will result in the loss of the right to possess a firearm, instead relying on diverse state definitions to determine what constitutes a crime punishable by more than one year supporting disarmament. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.")

Moreover, § 922(g)(1) does not consistently restore the right to keep and bear arms and instead relies upon disparate state restoration schemes, resulting in la lack of uniform application. See Id. Section 921(a)(2) provide that, Any conviction which has been expunged, or set aside or for which a Person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

State restoration laws vary greatly. For example, Mississippi law permanently disarms a felon, allowing for restoration of the right only based upon a pardon, a relief from disability pursuant to 18 U.S.C. Section § 925(c), or upon receipt of a certificate of rehabilitation. Miss. Code § 97-37-5. Meanwhile, the State of Louisiana has a 10-year cleansing period, and it bars possession of a firearm by anyone convicted of a crime of violence, sex crime, or drug crime for 10 years from discharge of a sentence, probation, or parole, regardless of receipt of a first offender pardon. La. R.S. § 14:95.1(c); *State v. Eberhardt,* 2013-2306 (LA. 7/1/14), 145 So.3d 377. IN Texas, a felon may possess a firearm five years after their release form confinement or supervision, but only at "the premise at which the person lives." Tex. Pen. Code § 46.04.

Under strict scrutiny, § 922(g)(1) must fail. The statute depends on varying state law regimes for defining criminal conduct and for restoration of the fundamental right to bear arms. It is far from the least restrictive means to address the problem of gun violence. The statute is therefore unconstitutional and violates the Fifth Amendment's equal protection guarantee. This Court should accordingly dismiss the indictment filed against Movant.

## Conclusion

The Government has failed to meet its burden of offering relevant historical analogues to meet its burden of proof post-*Diaz* to justify Movant's disarmament. Accordingly, § 922(g)(1) is constitutional as applied to him. Moreover, after *Diaz,* it is untenable that any felony conviction can support disarmament under § 922(g)(1). Thus, the statute is now unconstitutionally vague because a person of ordinary intelligence cannot discern whether their possession of a firearm is a constitutional entitlement or a federal felony. Movant submits that his conviction and sentence must therefore be vacated and remanded for further proceedings based on any or all grounds raised within.

Respectfully Submitted

x *[signature]*

MCH